**STATE v. MOORE**

[132 N.C. App. 802 (1999)]

═══════════

STATE OF NORTH CAROLINA v. CHARLES SAMUEL MOORE

No. COA98-530

(Filed 6 April 1999)

**Motor Vehicles— driving while impaired—Intoxilyzer—third test—necessary steps**

The trial court erred by suppressing the results of an Intoxilyzer test where the first two samples differed by more than .02 and the required third sample was taken without additional procedures being performed between the second and third samples. The key phrase in the regulations governing repeating steps for a third or subsequent test is "as applicable"; the trooper properly interpreted the regulations such that the only applicable step to repeat was step (6), "PLEASE BLOW."

Appeal by the State from an order entered 11 February 1998 by Judge W. Erwin Spainhour in Guilford County Superior Court. Heard in the Court of Appeals 27 January 1999.

## STATE v. MOORE

[132 N.C. App. 802 (1999)]

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*Adams, Kleemeier, Hagan, Hannah & Fouts, A Professional Limited Liability Company, by Amiel J. Rossabi and R. Stuart Albright; and Joel N. Oakley, for defendant-appellant.*

WALKER, Judge.

The State appeals from the trial court's order suppressing the results of a breath alcohol content test administered to the defendant. On 13 December 1996, at approximately 4:45 p.m., defendant was arrested and charged with driving while impaired in violation of N.C. Gen. Stat. § 20-138.1. Trooper J.G. George, a twenty-six year veteran of the North Carolina Highway Patrol, was the arresting officer. Trooper George, who is also a certified chemical analyst, administered a breath test to defendant using an Intoxilyzer, Model 5000 (Intoxilyzer). At 6:39 p.m., Trooper George advised defendant of his rights and began the required observation period. At 7:14 p.m., Trooper George began the test, and the calibration check resulted in a reading of .07 alcohol concentration. Alcohol concentration is measured in terms of grams of alcohol per 210 liters of breath. Trooper George testified that if the machine read .07 or .08 it was considered properly calibrated. The first breath sample taken at 7:15 p.m. registered a reading of .20. The second sample taken at 7:17 p.m. registered a reading of .23. Because the first two samples differed by more than .02, a required third sample was taken at 7:18 p.m. which registered a reading of .23. No additional procedures were performed between the collection of the second and third samples.

At trial, defendant moved to suppress the results of the test on the grounds that the procedures for the operation of the Intoxilyzer were not followed and that the results could not then be admissible under N.C. Gen. Stat. § 20-139.1 as a valid chemical analysis. Specifically, defendant argued that because Trooper George did not repeat certain steps in the testing process between the second and third tests, the third test was invalid. The trial court found that Trooper George failed to repeat all of the steps between the second and third tests. For that reason, the trial court granted the motion to suppress the evidence.

The State assigns as error the trial court's granting of the motion to suppress the test results.

The Intoxilyzer is a breath-testing instrument approved for use by the North Carolina Commission for Health Services (Commission). Pursuant to N.C. Gen. Stat. § 20-139.1 (Cum. Supp. 1997), the Commission has adopted procedures for the use of this instrument which are codified at 15A NCAC 19B.0320 (June 1998):

> The operational procedures to be followed in using the Intoxilyzer, Model 5000 are:
>
> (1) Insure instrument displays time and date;
>
> (2) Insure observation period requirements have been met;
>
> (3) Press "START TEST"; when "INSERT CARD" appears, insert test record;
>
> (4) Enter appropriate information;
>
> (5) Verify instrument calibration;
>
> (6) When "PLEASE BLOW" appears, collect breath sample;
>
> (7) When "PLEASE BLOW" appears, collect breath sample;
>
> (8) When test record ejects, remove. ·
>
> If the alcohol concentrations differ by more than 0.02, a third or subsequent test shall be administered as soon as feasible by repeating steps (1) through (8), *as applicable.*

(Emphasis added). These procedures are the only regulations approved by the Commission for the operation of the Intoxilyzer.

> The trial court made the following findings:
>
> The defendant has offered uncontradicted evidence which shows, and the Court Finds, that after the second sample was taken at 7:17 p.m., reading .23, that the investigating officer did not repeat steps (1) through (8) as required by the regulations.
>
> A repeat of some or all of the steps numbered (1) through (8) in N.C. Administrative Code title 15A r. 19B.0320 (the "Steps") was required by the specific provisions of the regulations before Trooper George administered a third or any subsequent tests to the defendant. There is no evidence that Trooper George repeated any of the steps before he administered the third test to

the defendant. The only evidence before the Court is that he did not repeat any of the steps before administering the third test.

The regulations as enacted by the Department of Environment, Health and Natural Resources, must be followed and clearly not all of the required steps detailed in the requirements of the regulations have been met that would be applicable.

The sole issue presented by this appeal is what steps in the testing process must be repeated before a third or subsequent test is performed in situations where the first two readings differ by more than .02.

Defendant concedes that steps (1) and (2) are satisfied automatically and are thus "inapplicable" for the purposes of collecting a third breath sample. However, defendant argues that steps (3) through (8) are "relevant" and therefore "applicable" and should have been "repeated" before a third test was given. The State argues that the Intoxilyzer is programmed to automatically ask for a third breath sample if the first and second tests differ by more than .02.

In his testimony, Trooper George explained that the Intoxilyzer is programmed and when the test card is inserted in step (3), the machine automatically prompts a third test if the first two tests differ by more than the minimum amount (.02). The cue for the third test on the Intoxilyzer appears as "PLEASE BLOW," the same message displayed for steps (6) and (7) of the procedure. After the third test is performed, if this test again differs by more than .02 from the previous test, the machine then ejects the test card and the process must begin anew with a second test card at which time steps (1) through (8) would be applicable. Trooper George also testified that it was unnecessary to repeat the first five steps in the process before giving a third test because the information about the subject had already been entered, the waiting period had been observed and the Intoxilyzer, once having been calibrated, continues to be operational for the third test.

As previously noted, the Intoxilyzer regulations require that where the alcohol concentrations in the first two tests differ by more than .02 a third or subsequent test is to be given "as soon as feasible by repeating steps (1) through (8), as applicable." 15A NCAC 19B.0320 (June 1998). The key phrase in the regulations governing a third or subsequent test is "as applicable." "Where an issue of statutory interpretation arises, the construction adopted by those who

execute and administer the law in question is highly relevant." *State v. Tew*, 326 N.C. 732, 739, 392 S.E.2d 603, 607 (1990). The Intoxilyzers are provided and programmed by the Commission for use by chemical analysts throughout this State. "The construction adopted by the Commission . . . is particularly instructive since the subject matter involves the proper use of a scientific instrument for which the Commission was authorized to determine the rules of operation." *Id.* at 739-40, 392 S.E.2d at 607. In *Tew*, the defendant challenged the procedures that were established by the Commission for taking readings from the Breathalyzer, Model 200. *Id.* Citing N.C. Gen. Stat. § 20-139.1, our Supreme Court held that it was clearly the legislative intent for the Commission to be responsible for the implementation of procedures for the use of this machine. *Id.* Likewise, in this case, the Commission has been given the responsibility for creating the guidelines for the Intoxilyzer.

In *State v. Lockwood*, 78 N.C. App. 205, 336 S.E.2d 678 (1985), the defendant contended that the Commission failed to establish the appropriate times for the taking of sequential breath samples. This Court relied on the steps programmed into the Breathalyzer to find that the Commission had indeed established those times. *Id.* at 207, 336 S.E.2d at 679.

Defendant further argues that because N.C. Gen. Stat. § 20-139.1 is a criminal statute both the statute and regulations implementing it should be construed strictly against the State and in favor of the accused. However, in doing so, we note that the Commission is charged with the responsibility for creating the appropriate guidelines which only require the repetition of steps that are applicable. As Trooper George testified, steps (1) through (4) are not necessary to the completion of a third test. Further, there is no requirement in the regulations that the Intoxilyzer must be re-calibrated, per step (5), for subsequent tests. By prompting a third test with the message "PLEASE BLOW," the Intoxilyzer is directing the analyst to repeat step (6) or (7). These steps are identical, but the repetition of only one of these steps is required to obtain a third test.

We conclude from all the evidence that Trooper George properly interpreted the regulations such that the only applicable step to repeat was step (6) before administering a third test. Therefore, the trial court erred in concluding that "[t]he provisions of the foregoing regulation issued by the Department of Environment, Health and Natural Resources have not been followed as required by law."

For the reasons stated herein, the order of the trial court suppressing the results of the Intoxilyzer test is

Reversed.

Judges LEWIS and TIMMONS-GOODSON concur.