STATE OF NORTH CAROLINA v. ALFONZA LAMONT SHOCKLEY

No. COA09-241

(Filed 8 December 2009)

**1. Evidence— driving while intoxicated—consecutively administered tests**

Because two of four attempted Intoxilyzer tests met the "consecutively administered tests" requirement under N.C.G.S. § 20-139.1(b3) (2005), the trial court did not err in admitting into evidence the lower of the two valid readings.

**2. Evidence— driving while intoxicated—consecutively administered tests**

Two Intoxilyzer tests conducted within 11 minutes of each other were "consecutively administered tests" where defendant's failure to properly blow into the machine resulted in an intervening invalid reading.

### 3. Evidence— plain error

The admission of testimony regarding defendant's refusal to give a subsequent breath sample, though possibly erroneous on relevancy grounds, did not rise to the level of plain error.

Appeal by defendant from judgment entered 26 June 2008 by Judge Henry V. Barnette, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 29 September 2009.

*Attorney General Roy Cooper, by Assistant Attorney General John W. Congleton, for the State.*

*S. Hannah Demeritt, for defendant-appellant.*

WYNN, Judge.

Under N.C. Gen. Stat. § 20-139.1(b3), readings employed from chemical analyses of breath to prove alcohol concentration must be from "consecutively administered tests."[1] Here, Defendant Alfonza Lamont Shockley challenges the trial court's admission of the results of non-consecutive Intoxilyzer tests. Because results were obtained from two of four attempted breath samples collected within a reasonable time, we hold that the readings in this case met the "consecutively administered tests" requirement under N.C. Gen. Stat. § 20-139.1(b3).

In the early morning hours of 28 September 2006, an off duty Raleigh police officer came upon a vehicle stopped at a green light at the intersection of Atlantic Avenue and Forest Oaks Drive. After observing that the vehicle remained stationary for an entire light cycle, he called other Raleigh police officers to investigate. When uniformed officers arrived on the scene, they found Defendant asleep in his car. The vehicle's engine was running and the rear lights indicated that the brakes were being depressed. Before waking Defendant, officers reached inside the vehicle, put the vehicle's transmission into park, turned the engine off, and removed the keys from the ignition. Officers noticed a strong odor of alcohol inside the vehicle. Only by shaking him and speaking to him in a loud voice were officers able to rouse Defendant. Defendant's responses to officers' questions were incoherent and his speech was slurred.

Officers had Defendant exit the vehicle to perform field sobriety tests. As he was exiting the vehicle, Defendant had to use the door for

---

1. N.C. Gen. Stat. § 20-139.1(b3) (2005).

balance, and as he walked toward the rear of the vehicle he used the car to keep himself upright. Officers also detected an odor of alcohol about Defendant's person. Defendant was unable to produce his driver's license at the officers' request. Because Defendant was unsteady on his feet, did not give coherent answers, did not produce his driver's license, and smelled of alcohol, officers arrested Defendant for DWI without conducting field sobriety tests.

Thereafter, officers conducted Defendant to the Wake County Jail, where he was escorted to a room used for chemical analyses. The Intoxilyzer 5000 is used to determine alcohol concentration by taking samples of a suspect's breath. To register an adequate sample, a suspect must blow into the machine with sufficient force. After reading Defendant his rights regarding the chemical analysis, waiting the mandatory fifteen-minute observation period, and calibrating the machine, Officer Jonathan Gray requested that Defendant blow into the mouthpiece. At 6:05 a.m., Defendant provided a valid breath sample of 0.16. Officer Gray re-calibrated the machine, and asked Defendant to provide another sample. While blowing into the mouthpiece for a second time, Defendant turned his head slightly, allowing air to escape past the mouthpiece and preventing the machine from receiving an adequate sample. Defendant explained that he was unable to perform the second blow because an exposed nerve in his tooth made it too painful.

Officer Gray waited fifteen minutes before initiating another test. He then requested that Defendant blow again into the Intoxilyzer machine. At 6:23 a.m., Defendant provided a valid breath sample of 0.15.[2] Officer Gray then requested that Defendant provide another sample. Again, Defendant turned his head slightly, failing to make a proper seal with the mouthpiece. On the fourth blow, the Intoxilyzer again returned an invalid reading.

Officer Gray did not ask Defendant to blow again. The officer re-calibrated the machine and registered a "refusal," based on his opinion that during the second and fourth blows Defendant had willfully tried not to provide a sufficient sample. Officer Gray noted Defendant's refusal at 6:33 a.m.

On the day of the trial but before the jury was empaneled, the trial court was asked to consider the admissibility of the Intoxilyzer

2. We note that these results are within the 0.02 window allowed by N.C. Gen. Stat. § 20-139.1(b3). Defendant does not challenge admissibility under this prong of the test.

results. The admissibility of Intoxilyzer results was governed by the pre-December 1, 2006 version of North Carolina General Statute § 20-139.1(b3). In pertinent part, it reads:

> (b3) Sequential Breath Tests Required.—By January 1, 1985, the regulations of the Commission for Health Services governing the administration of chemical analyses of the breath shall require the testing of at least duplicate sequential breath samples. Those regulations must provide:
>
> . . .
>
> (2) That the test results may only be used to prove a person's particular alcohol concentration if:
>
> a. The pair of readings employed are from consecutively administered tests; and
>
> b. The readings do not differ from each other by an alcohol concentration greater than 0.02.
>
> (3) That when a pair of analyses meets the requirements of subdivision (2), only the lower of the two readings may be used by the State as proof of a person's alcohol concentration in any court or administrative proceeding.
>
> A person's refusal to give the sequential breath samples necessary to constitute a valid chemical analysis is a refusal under G.S. 20-16.2(c).
>
> A person's refusal to give the second or subsequent breath sample shall make the result of the first breath sample, or the result of the sample providing the lowest alcohol concentration if more than one breath sample is provided, admissible in any judicial or administrative hearing for any relevant purpose, including the establishment that a person had a particular alcohol concentration for conviction of an offense involving impaired driving.

N.C. Gen. Stat. § 20-139.1(b3)(2005).

The trial court reserved judgment on the issue, allowing defense counsel to object at the appropriate time. When the State attempted to introduce the Intoxilyzer results, defense counsel objected, and the trial court conducted a *voir dire* of Officer Gray on the admissibility of the results. The trial court subsequently overruled the objection, and the State was allowed to introduce evidence of the lower of the two valid breath samples collected. Officer Gray also testified,

without objection, that Defendant had willfully refused to comply with the test. Defendant was convicted by a jury of DWI, and judgment was entered on 26 June 2008. This appeal followed.

Defendant argues that the trial court erred in admitting two forms of prohibited evidence: (I) results of non-consecutive Intoxilyzer tests, and (II) testimony regarding Defendant's refusal. For the reasons enunciated below, we disagree.

We review the trial court's admission of the Intoxilyzer results *de novo*. *State v. Hazelwood*, 187 N.C. App. 94, 98, 652 S.E.2d 63, 66 (2007), *cert. denied*, No. 09-5598, 2009 U.S. LEXIS 8077 (U.S. Nov. 9, 2009).

I.

[1] Defendant first challenges the trial court's admission of the results of non-consecutive Intoxilyzer tests. This Court addressed similar facts in *State v. White*, 84 N.C. App. 111, 351 S.E.2d 828 (1987). In that case, defendant was asked to provide a breath sample by blowing into the breathalyzer machine. He did as requested, and the first breath sample of 0.20 was recorded at 11:15 a.m. *Id.* at 114, 351 S.E.2d at 830. Defendant was asked to provide a second sample, but on this attempt merely " 'puffed' " into the machine, preventing the chemical analyst from obtaining a reading. The machine indicated that the breath sample had been insufficient and failed to give a result. *Id.* A third attempt resulted in another invalid reading. Warned by the attendant analyst that another failure would be considered a willful refusal, defendant provided a sufficient sample of 0.19 on his fourth attempt at 11:26 a.m. *Id.* at 114, 351 S.E.2d at 830.

On appeal, defendant in *White* argued that the intervening attempts made the results inadmissible because they were not "sequential breath samples," as required under the first paragraph of N.C. Gen. Stat. § 20-139.1(b3). The State argued that "under subparagraph (2)a, there were 'consecutively administered tests,' as the machine automatically rejects insufficient breath samples and, therefore, no 'tests' were conducted on those samples." *White*, 84 N.C. App. at 114, 351 S.E.2d at 830. This Court in *White* found that the results obtained met the statutory requirements for admission under N.C. Gen. Stat. § 20-139.1(b3).

Because these readings were taken from "consecutively administered tests" on adequate breath samples given within eleven minutes of one another, and because the readings are within .01 of

one another, the statute requiring sequential testing was, in our view, complied with in this case. To hold otherwise would allow an accused to thwart the testing process by deliberately giving insufficient breath samples.

*White*, 84 N.C. App. at 114, 351 S.E.2d at 830.

[2] Defendant's attempts to distinguish *White* from the case *sub judice* are unconvincing. In both cases, the defendants consented to a test of their breath; the only adequate samples provided were tested consecutively; and two valid readings that did not differ from each other by an alcohol concentration greater than 0.02 were collected. To distinguish this case as we are asked to do based on the supposition that "[w]hen [officer] Gray chose to start the observation period over, it indicated his intention to start the testing over, effectively nullifying the results of the previous testing period," would create a distinction (between consecutive and non-consecutive tests) based on nothing more than a difference of six minutes. This we decline to do.

We do not fail to notice either that the defendant in *White* provided two intervening invalid samples, whereas Defendant here provided only one. Defendant does not offer any explanation for how fewer interruptions could make the tests any less consecutive than they were in *White*. Consequently, we now hold that the trial court did not commit reversible error when it allowed admission into evidence of the lesser of Defendant Shockley's sequential and consecutive Intoxilyzer results.

Defendant also argues that the trial court submitted a question of law to the jury when it "did not specifically find or conclude that the blows were sequential, but admitted the evidence over defense objection." Defendant is correct to assert that what constitutes evidence, or what is admissible, is a question of law for the court. *State v. Walters*, 275 N.C. 615, 623, 170 S.E.2d 484, 490 (1969). But it does not follow that a question of law, in this case, was submitted to the jury. The question of the admissibility of the evidence was decided by the judge in ruling on Defendant's objection. We therefore find no merit to this argument.

II.

[3] Defendant also challenges the trial court's admission of Officer Gray's testimony regarding Defendant's willful refusal to comply with the testing procedure. A willful refusal to submit to an Intoxilyzer test is not a necessary element of DWI. N.C. Gen. Stat. § 20-138.1 (2005).

Defendant's real objection to the testimony regarding his refusal can only be based on the possibility that the trial court ruled the Intoxilyzer results admissible pursuant to subsection (3) of N.C. Gen. Stat. § 20-139.1(b3), which allows admission of the first breath sample where there is a subsequent refusal. Standing alone, the testimony is at most irrelevant.[3] But the Intoxilyzer results were admissible under *White* based on consecutive testing, not based on Defendant's refusal. Thus Defendant's conviction rests squarely on admissible evidence. Because we hold that there was no error in admitting the lower of the Intoxilyzer results pursuant to N.C. Gen. Stat. § 20-139.1(b3) without regard to the refusal provisions, we need not reach the issue of whether the result was also admissible due to a subsequent refusal. The admission of the testimony regarding Defendant's refusal, though possibly erroneous on relevancy grounds, was not objected to at trial; and does not rise to the level of plain error. *See State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

No error.

Judges CALABRIA and ELMORE concur.

---

3. Defendant implicitly recognizes this conclusion when he observes in his brief "as the judge had already heard evidence of purportedly consecutive Intoxilyzer results, evidence of a refusal was unnecessary. . . ."