**STATE v. CATHCART**

[227 N.C. App. 347 (2013)]

NO ERROR.

Judges ELMORE and STEELMAN concur.

---

STATE OF NORTH CAROLINA
v.
JOHN G. CATHCART, Defendant

No. COA12-1478

Filed 21 May 2013

1. **Motor Vehicles—impaired driving—sequential test results**

   The trial court erred in an impaired driving prosecution by concluding that Intoximeter test results were not sequential for the purposes of N.C.G.S. § 20-139.1(b3). The fact that the machine timed out and was restarted was not material to the determination of whether the tests were sequential; the only reason the tests were not immediately consecutive was because defendant gave an insufficient breath sample. Neither the trial court nor defendant cited any statute, regulation, or other authority that required that the sequential tests actually appear on the same test result ticket.

2. **Motor Vehicles—impaired driving—testing—observational period**

   The trial court erred in an impaired driving prosecution by concluding that the trooper failed to follow the proper procedure by not conducting another observational period after the test machine timed out. Defendant was under constant observation by the trooper prior to the second test and there was no evidence that defendant ate, drank, smoked, vomited, or did anything that might require a break before the subsequent test.

   Appeal by State from Order entered 5 November 2012 by Judge Patrice A. Hinnant in Superior Court, Forsyth County. Heard in the Court of Appeals 24 April 2013.

   *Attorney General Roy A. Cooper, III by Assistant Attorney General Carrie D. Randa, for the State.*

   *Law Offices of J. Darren Byers, P.A. by J. Darren Byers, for defendant-appellee.*

STROUD, Judge.

The State appeals from an order entered 5 November 2012 by the Superior Court, Forsyth County, granting a motion to suppress breath test results from an Intoximeter EC/IR II on the grounds that the analyst failed to follow the testing procedure outlined in N.C. Gen. Stat. § 20-139.1 and N.C. Admin. Code tit. 10A, r. 41B.0322. For the following reasons, we reverse.

## I. Background

On 14 October 2010, John Cathcart ("defendant") was arrested and charged with one count of driving while impaired by Trooper T.V. Trollinger of the North Carolina State Highway Patrol. Trooper Trollinger took defendant to the Winston-Salem police department for breath alcohol testing using the Intoximeter EC/IR II. Trooper Trollinger, a certified chemical analyst, had been trained to operate the Intoximeter EC/IR II machine. The Intoximeter measures the concentration of alcohol in the breath.

The trooper read defendant his rights and advised him that he could wash his mouth out and remove his dentures prior to the breath test. After being advised of his rights, defendant told the trooper that he wanted a witness present. Defendant called his witness at 10:47 p.m., but after forty-one minutes no witness had arrived. While waiting for defendant's witness to arrive, Trooper Trollinger observed defendant to make sure he did not eat, drink, smoke, or vomit before providing a breath sample.

At 11:27 p.m., Trooper Trollinger administered the first breath test, which returned a result of .10 grams of alcohol per 210 liters of breath. When the trooper asked for a second breath sample, defendant did not blow hard enough and the Intoximeter returned an "insufficient sample" result. At that point, the Intoximeter timed out and printed out the first test result ticket, which showed one valid result and one insufficient sample result. Trooper Trollinger reset the machine, re-entered defendant's information, and asked defendant to provide another breath sample. He did not wait for any period of time before starting the second test. The next sample was enough for the Intoximeter to measure and it returned a concentration of .09. Because this second test was within .02 of the first test, Trooper Trollinger did not conduct a third test. The second valid sample was taken at 11:38 p.m. and printed on a second test result ticket.

Defendant filed a motion to suppress the test results on 1 May 2012. On 12 June 2012, the Superior Court, Forsyth County, held a hearing on defendant's motion and took testimony from Trooper Trollinger and Paul

Glover, head of Forensic Tests for Alcohol Branch in the Department of Health and Human Services. Defendant argued that the trooper failed to follow proper procedures in administering the test, especially in that Trooper Trollinger failed to conduct another observational period before starting the second test. The State, supported by the testimony of Trooper Trollinger and Mr. Glover, argued that there was no need for a second observational period because the first period fulfilled the observational requirement.

At the end of the hearing, the trial court announced that it would grant defendant's motion to suppress. The State immediately gave oral notice of appeal in open court and then filed written notice of appeal on 5 July 2012. The trial court entered its written order, containing its findings of fact and conclusions of law, on 5 November 2012.

## II. Order Suppressing Breath Tests

The trial court ordered the suppression of defendant's breath test results because it concluded that Trooper Trollinger did not follow the procedures outlined in N.C. Admin. Code tit. 10A, r. 41B.0322 (2009) and because he did not acquire two sequential breath samples on the same test record ticket. The State does not contest any of the trial court's findings of fact, but argues that the trial court erred in concluding that the breath samples were not sequential and that the Trooper failed to follow the proper procedure. We agree.

A. Standard of Review

Our review of an order granting a defendant's motion to suppress

> is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.

*State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted).

> However, when, as here, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed *de novo* and are subject to full review. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.

*State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citations and quotation marks omitted).

B.  Analysis

**[1]** The trial court found the facts as summarized above and made the following conclusions of law:

> 1)  Based on the foregoing findings of fact, the Court finds that the Intoximeter results for the Defendant are not admissible due to a subject refusal.
>
> 2)  Further, the breath test results are not admissible as there are not 2 sequential breath test result[s] on either test record ticket introduced by the State. Before beginning the new testing of the defendant on the second test record ticket the defendant [sic] did not advise the defendant of his rights or conduct an observation period. As a result, the Trooper did not comply with 10A NCAC 41B .0322 for the operation procedures to be followed in using Intoximeters, Model Intox EC/IR II from the Department of Health and Human Services. Pursuant to 10A NCAC 41B .0322 and State v. Shockley, 210 NC App 431 (2009), since the proper operational procedures were not followed in using the Intox EC/IR II the breath test results of the Defendant are not admissible.
>
> 3)  Accordingly, the Court must suppress any evidence of the breath test results from Defendant, John G. Cathcart.

The trial court concluded that neither of the two test results was admissible because neither was the lower of at least two sequential tests within a range of .02 grams and there was no evidence that defendant had refused a subsequent test. *See* N.C. Gen. Stat. § 20-139.1(b3) (2009). The State does not contest the court's findings on refusal. Therefore, the only question before us is whether the trial court correctly concluded that the two tests that returned results were not sequential for purposes of N.C. Gen. Stat. § 20-139.1(b3) and whether the trooper complied with the observation requirement.

N.C. Gen. Stat. § 20-139.1(b3) requires

> the testing of at least duplicate sequential breath samples. The results of the chemical analysis of all breath samples are admissible if the test results from any two consecutively collected breath samples do not differ from each

other by an alcohol concentration greater than 0.02. Only the lower of the two test results of the consecutively administered tests can be used to prove a particular alcohol concentration.

N.C. Gen. Stat. § 20-139.1(b3).

We hold that the trial court erred in concluding that the two test results were not sequential for purposes of this section. The trial court found that at 11:27 p.m., the Trooper asked defendant to submit a breath sample, which registered an alcohol concentration of .10 on the Intoximeter. The Trooper asked defendant to provide another breath sample, which was insufficient for the machine to measure. The Intoximeter timed out, so the Trooper restarted it and reentered defendant's information. At 11:38 p.m., the Trooper had defendant provide another breath sample, which registered as .09. After this second valid sample, Trooper Trollinger did not take any more breath samples.

We confronted a similar situation in *State v. White*. In that case, "the time of the first reading was 11:15 a.m., and the time of the second reading was 11:26 a.m. The first reading showed an alcohol concentration of .20 and the second showed a concentration of .19." *State v. White*, 84 N.C. App. 111, 114, 351 S.E.2d 828, 830, *app. dismissed*, 319 N.C. 409, 354 S.E.2d 887 (1987). We concluded that "[b]ecause these readings were taken from 'consecutively administered tests' on adequate breath samples given within eleven minutes of one another, and because the readings are within .01 of one another, the statute requiring sequential testing was . . . complied with in this case." *Id*. These tests were "sequential" despite the fact that there were two insufficient samples taken between the two sufficient samples. *Id*. at 113, 351 S.E.2d at 829.

We see no way to distinguish *White* from the present case. The fact that the machine here timed out and was restarted is not material to the determination of whether the tests were sequential. *See State v. Shockley*, 201 N.C. App. 431, 436, 689 S.E.2d 455, 458 (2009) (holding that the fact that the trooper started the testing process over did not prevent the breath samples from being sequential). The tests occurred within eleven minutes of each other—the same amount of time, to the minute, we considered in *White*. The only reason the tests were not immediately consecutive was because defendant gave an insufficient breath sample.

Additionally, neither the trial court nor defendant cites any statute, regulation, or other authority that requires that the sequential tests actually appear on the same test result ticket. The fact that the test results were printed on separate tickets does not change their sequential

character when they were taken within an eleven minute period and the only intervening event was the resetting of the machine for the second test. Therefore, we hold that the trial court erred in concluding that the test results were not sequential for the purposes of N.C. Gen. Stat. § 20-139.1(b3).

**[2]** Finally, the State argues that the trial court erred in concluding that the Trooper failed to properly follow the procedure outlined in N.C. Admin. Code tit. 10A, r. 41B.0322. Defendant argues and the trial court concluded that when the Intoximeter timed out, Trooper Trollinger had to conduct another observational period, which he did not do. We hold that the trial court erred in concluding that the trooper failed to follow the proper procedure.

N.C. Admin. Code tit. 10A, r. 41B.0322 lays out an eight step process governing the administration of a breath test using the Intoximeter EC/IR II:

(1)   Insure instrument displays time and date;

(2)   Insure observation period requirements have been met;

(3)   Initiate breath test sequence;

(4)   Enter information as prompted;

(5)   Verify instrument accuracy;

(6)   When "PLEASE BLOW" appears, collect breath sample;

(7)   When "PLEASE BLOW" appears, collect breath sample; and

(8)   Print test record.

If the alcohol concentrations differ by more than .02, a third or fourth breath sample shall be collected when "PLEASE BLOW" appears. Subsequent tests shall be administered as soon as feasible by repeating steps (1) through (8), *as applicable.*

N.C. Admin. Code, tit. 10A, r. 41B.0322 (emphasis added).

In *State v. Moore*, we held that a breath test was admissible despite the fact that the testing officer did not repeat all eight steps in N.C. Admin. Code tit. 10A, r. 41B.0322. 132 N.C. App. 802, 806, 513 S.E.2d 346,

STATE v. CATHCART

[227 N.C. App. 347 (2013)]

348 (1999). We observed that "[t]he key phrase in the regulations governing a third or subsequent test is 'as applicable.' " *Id.* at 805, 513 S.E.2d at 348. Under the facts of that case, we concluded that the only step that the testing officer had to repeat was step (6) or (7). *Id.* at 806, 513 S.E.2d at 348. The defendant in Moore conceded that it was not necessary to repeat the observational period when restarting a breath test. *Id.* at 805, 513 S.E.2d at 347.

"As applicable" means that a testing officer is not required to repeat those steps that are not necessary for an accurate test. In *Moore*, it was not necessary for the testing officer to reenter the defendant's information. *Id.* at 806, 513 S.E.2d at 348. Here, because the machine timed out and had to be reset, the Trooper had to reenter the defendant's information in order to proceed with a subsequent test. It was not necessary, however, to have another observational period.

The observational period is

> a period during which a chemical analyst observes the person or persons to be tested to determine that the person or persons has not ingested alcohol or other fluids, regurgitated, vomited, eaten, or smoked in the 15 minutes immediately prior to the collection of a breath specimen. The chemical analyst may observe while conducting the operational procedures in using a breath-testing instrument.

N.C. Admin. Code tit. 10A, r. 41B.0101(6) (2009).

Defendant was under constant observation by the trooper for approximately fifty-one minutes prior to the second test. The "observation period requirements" as to time are only 15 minutes at a minimum and the regulations do not prevent a longer observation period. *Id.* There was no evidence that defendant ate, drank, smoked, vomited, or did anything that might require a break before the subsequent test.[1] We see no reason that another, separate observation period would be required. We hold that the trial court erred in concluding otherwise.

---

1. Mr. Glover, the State's alcohol testing expert, wrote the state's training manual for the Intoximeter. He testified that "As long as [the test subject does not] violate that observation period by eating, drinking, smoking, regurgitating, or by the analyst being out of the presence of the person, an observation period, once it's started, could continue for hours, so long as nothing occurs during that period. Normally, we wouldnt have observation periods that long. But once you start it, if you don't observe any violations, the observation period continues until you complete whatever tests you're doing and are finished."

III.  Conclusion

The trial court erred in concluding that Trooper Trollinger failed to follow the proper procedures in administering the Intoximeter breath test to defendant and that the breath test results were therefore inadmissible. Accordingly, we reverse the trial court's order and remand with instructions for the trial court to enter an order denying defendant's motion to suppress the breath test results.

REVERSED and REMANDED.

Judges HUNTER, Robert C. and ERVIN concur.