BERGER, Judge.
 

 *840
 
 John Leonard Clapp III ("Defendant") was arrested on September 5, 2015 for driving while impaired. Less than three hours later, Defendant was again arrested for driving while impaired and, because of his first arrest, driving while license revoked. Defendant moved to suppress evidence which the State planned on using to prove his second driving while impaired arrest, and the trial court granted this motion. The State appeals, arguing that the uncontroverted evidence was sufficient to establish probable cause for Defendant's arrest. We agree, and therefore reverse.
 

 Factual and Procedural Background
 

 Defendant's motion to suppress was heard in Wilkes County Superior Court on May 15, 2017. The State's witnesses at the suppression hearing were Officer Tyler Hall and Officer Craig Greer of the North Wilkesboro Police Department. Defendant did not introduce any evidence.
 

 Evidence presented by the State tended to show that on September 5, 2015, officers with the North Wilkesboro Police Department pulled Defendant over at a Wendy's restaurant and arrested him for driving while impaired at approximately 9:30 p.m. Officer Hall parked Defendant's BMW 750i in the Wendy's parking lot and locked the vehicle.
 

 Officer Hall transported Defendant to the county jail, where Defendant provided a breath sample for analysis at 10:25 p.m. Defendant's blood alcohol concentration based on the EC/IR II breath analysis was 0.16 grams of alcohol per 210 liters of breath. Defendant was then transferred to the magistrate's office where he was notified his license had been revoked because of his arrest. He signed a written promise to appear for his court date, and was released from the county jail at 11:35 p.m.
 

 Thirty minutes later, at 12:05 a.m. on September 6, 2015, Officer Hall saw Defendant in the driver's seat of his BMW at a gas station approximately one-half mile from the Wendy's. No one else was in the vehicle and the engine was running. Defendant's fiancée was beside him in a different vehicle. Officer Hall testified:
 

 [The State:] Can you tell the Court about your observations of [Defendant's] physical appearance on the second occasion and what you observed?
 

 *841
 
 [Officer Hall:] [Defendant] had an odor of alcohol coming from his person, he had slurred speech, red, glassy eyes and he was unsteady on his feet.
 

 [The State:] You said an odor of alcohol, how strong was the odor of alcohol?
 

 *225
 
 [Officer Hall:] It was a moderate odor of alcohol.
 

 [The State:] Where did you observe these physical appearances; was he inside or outside of the car?
 

 [Officer Hall:] He was outside of the car.
 

 [The State:] Where was the odor of alcohol coming from?
 

 [Officer Hall:] From his breath, it was coming from his person.
 

 [The State:] Prior to arresting [Defendant], did he make any statements to you?
 

 [Officer Hall:] Yes, he made a few statements.
 

 [The State:] Can you tell the Court what statements he made to you, Officer Hall?
 

 [Officer Hall:] He repeatedly quoted, "How am I supposed to leave a $75,000 car sitting in the Wendy's parking lot?" That's in quote.
 

 [The State:] Did he say anything else to you?
 

 [Officer Hall:] Yes. He also informed me that he was just driving the vehicle to where his son was staying or where his son was at the time.
 

 [The State:] Anything else that you remember?
 

 [Officer Hall:] He also asked if I would follow him the rest of the way.
 

 [The State:] You did not perform any field sobriety tests on him; is that correct?
 

 [Officer Hall:] No. Due to [Defendant's] safety, he was unable to safely stand on his feet.
 

 ....
 

 *842
 
 Basically, the fact that he had just an hour and 40 minutes prior blew a positive reading, and for the fact that he was unsteady on his feet, he couldn't safely perform the task. He was not asked to perform the standardized field sobriety testing.
 

 In response to questions on cross examination, Officer Hall testified about standard elimination rates for alcohol in the blood:
 

 For the average person, which I believe [Defendant] is an average person, a person's blood-alcohol concentration after reaching a peak value, which his peak value was around 16 when he quit drinking, will drop by about 0.015 an hour. For example, if he was to reach a maximum blood-alcohol level of a 15 which he blew a 16, it would take about 10 hours to completely eliminate that alcohol from his bloodstream.
 

 ....
 

 Due to the positive reading, we formed the opinion that he still had plenty of alcohol still in his bloodstream.
 

 At the conclusion of the hearing, the trial court stated, "Upon presentation of evidence, review of the cases and contentions of counsel, it appears a basis hasn't been established to allow the Court in its discretion to grant the motion in its entirety."
 

 However, the trial court filed a written order on June 8, 2017 granting the motion to suppress. The trial court made findings of fact that Defendant had a blood alcohol concentration of 0.16 one hour and forty minutes prior to the second encounter with Officer Hall, and that Officer Hall issued an affidavit and revocation report which stated he observed that "Defendant was unsteady on his feet, had a moderate odor of alcohol coming from his person, had red glassy eyes, and had slurred speech."
 

 In granting the motion to suppress, the trial court concluded that "the facts and circumstances known to Officer [Hall] as a result of his observations ... are insufficient, under the totality of [the] circumstances, to form an opinion in the mind of a reasonable, objective, and prudent officer that there was probable cause to arrest the Defendant for the offense of driving while impaired."
 

 The State entered timely notice of appeal, and argues the trial court erred in granting Defendant's motion to suppress. We agree.
 

 *843
 

 Standard of Review
 

 In determining whether the trial court properly granted a defendant's motion to suppress, our review "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 

 *226
 

 State v. Cathcart
 
 ,
 
 227 N.C. App. 347
 
 , 349,
 
 742 S.E.2d 321
 
 , 323 (2013) (citation omitted). "Conclusions of law are reviewed
 
 de novo
 
 ."
 
 State v. Gerard
 
 , --- N.C.App. ----, ----,
 
 790 S.E.2d 592
 
 , 594 (2016) (citation omitted).
 

 Analysis
 

 I.
 
 Trial Court's Findings of Fact
 

 First, the State challenges the trial court's findings of fact in the written order. Specifically, the State argues that the following findings of fact are not supported by competent evidence:
 

 10. Officer [Hall] encountered the Defendant at the Wilco-Hess gas station public vehicular area approximately one hour and 40 minutes after the Defendant had blown a 0.16 breath alcohol concentration on the Intoximeter EC/IR-II, and approximately 40 minutes after the Defendant had been released on the initial DWI charge.
 

 ....
 

 12. Officer [Hall] noted in an affidavit to support his traffic report items that were
 
 not
 
 included in his traffic report-which were that he observed the Defendant was unsteady on his feet, had a moderate odor of alcohol coming from his person, had red glassy eyes, and had slurred speech.
 

 13. Officer [Hall] did not administer any field sobriety tests to the Defendant. Officer [Hall] did not administer a portable breath test to the Defendant. Officer Hall observed that Defendant was unsteady during the 10-15 minutes of the encounter. Officer Hall did not inquire whether Defendant had any mobility problems although Defendant had a leg brace; whether he had consumed any food, beverage or medication in the interim; what he had done nor where he had been.
 

 ....
 

 *844
 
 16. Except as noted herein, Officer [Hall] did not observe any other signs of impairment during the second encounter with the Defendant.
 

 The State contends finding of fact 10 is inaccurate because it states that Defendant encountered Officer Hall on the second occasion "approximately 40 minutes after the Defendant had been released on the initial DWI charge." We agree. The uncontroverted evidence was that Defendant had been released from the jail at 11:35 p.m. and Officer Hall approached Defendant in the gas station parking lot at 12:05 a.m. Finding of fact 10 is not supported by competent evidence, and is not binding on this Court.
 

 The State next challenges finding of fact 12 "out of an abundance of caution." The trial court's finding of fact that Officer Hall included his observations that Defendant "was unsteady on his feet, had a moderate odor of alcohol coming from his person, had red glassy eyes, and had slurred speech" in an affidavit and revocation report was supported by competent and uncontroverted evidence. The trial court noted the observations were not in Officer Hall's incident report, but the trial court found they were included in an affidavit and revocation report. This Court is bound by the trial court's finding that Officer Hall issued an affidavit and revocation report which included his observations that Defendant "was unsteady on his feet, had a moderate odor of alcohol coming from his person, had red glassy eyes, and had slurred speech."
 

 The State next argues finding of fact 13 is not supported by competent evidence. We agree. There was no evidence presented that Defendant wore a leg brace or had mobility issues related thereto on September 5-6, 2015. The trial court found as fact that "Defendant had a leg brace" without any evidence to support that finding. On cross examination, Officer Hall testified:
 

 [Defense Counsel:] Now, [he's] unsteady on his feet, we've had a prior hearing and you know his brace, can you see his brace?
 

 [Officer Hall:] I cannot see his brace.
 

 [Defense Counsel:] May he stand up? Sir, just come right here so you can see his brace. You never seen his brace?
 

 [Officer Hall:] I never seen his brace.
 

 *845
 
 [Defense Counsel:] Did you ask him before, when he was unsteady on his feet, if he had any mobility problems?
 

 [Officer Hall:] I do not recall.
 

 The trial court's finding that Defendant wore a leg brace at any time relevant to
 
 *227
 
 Defendant's arrest for impaired driving is not supported by competent evidence. That Defendant wore a leg brace to a court proceeding seventeen months after his arrest, without more, is irrelevant at best. By his testimony, Officer Hall did not observe any medical device worn by Defendant during their encounters on September 5-6, 2015. Finding of fact 13, as it relates to Defendant's leg brace, is not supported by competent evidence and is not binding on this Court.
 

 The State also argues finding of fact 16 is not supported by competent evidence because there was additional evidence of Defendant's impairment during the second encounter that was known and available to Officer Hall when he arrested Defendant for the second driving while impaired charge. We agree.
 

 Officer Hall's knowledge of Defendant's prior blood alcohol concentration and his observation of the time that had elapsed since the administration of the EC/IR II breath test were signs that Defendant was still impaired during the second encounter. Officer Hall testified that because of Defendant's positive reading less than two hours prior to the second encounter, he believed Defendant "still had plenty of alcohol still in his bloodstream." Officer Hall's opinion was based upon the training he received that the average person eliminates alcohol from the body at a rate of 0.015 per hour from the peak blood alcohol concentration result. Officer Hall observed that Defendant was an average-sized person. Based on his observations of Defendant, his personal knowledge of the time that had passed since Defendant's breath analysis, and his training on alcohol elimination rates, Officer Hall concluded Defendant would still be impaired. Since it should take approximately ten hours for the alcohol in Defendant's blood to be removed from his system, this was a red flag to Officer Hall and a sign that Defendant was probably impaired at the time of the second encounter. The trial court's finding that Officer Hall did not observe any other signs of impairment is not supported by competent evidence, and is therefore not binding on this Court.
 

 Moreover, the uncontroverted evidence presented by the State does not support the trial court's conclusion of law that "the facts and circumstances known to Officer [Hall] as a result of his observations on September 6, 2015, of the Defendant are insufficient, under the totality of [the] circumstances" to establish probable cause.
 

 *846
 
 II.
 
 Probable Cause
 

 An officer may arrest an individual if the officer has probable cause to believe that individual has committed a criminal offense. N.C. Gen. Stat. § 15A-401(b) (2017). Our Supreme Court has stated that
 

 [p]robable cause is defined as those facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information which are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.
 

 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 168-69,
 
 712 S.E.2d 874
 
 , 879 (2011) (citations and quotation marks omitted). To establish probable cause, "it is not necessary to show that the offense was actually committed, only that the officer had a reasonable ground to believe it was committed."
 
 State v. Tappe
 
 ,
 
 139 N.C.App. 33
 
 , 36,
 
 533 S.E.2d 262
 
 , 264 (2000) (citation omitted). "Probable cause is a flexible, common-sense standard[,]"
 
 State v. Zuniga
 
 ,
 
 312 N.C. 251
 
 , 262,
 
 322 S.E.2d 140
 
 , 146 (1984), that "deals with probabilities and depends on the totality of the circumstances."
 
 State v. Overocker
 
 ,
 
 236 N.C.App. 423
 
 , 433,
 
 762 S.E.2d 921
 
 , 927,
 
 writ denied
 
 ,
 
 disc. review denied
 
 ,
 
 367 N.C. 802
 
 ,
 
 766 S.E.2d 686
 
 (2014) (citation and quotation marks omitted).
 

 The offense of driving while impaired for which Defendant was arrested is committed when an individual
 

 drives any vehicle upon any highway, any street, or any public vehicular area within this State:
 

 (1) While under the influence of an impairing substance; or
 

 (2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a
 
 *228
 
 chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration; or
 

 (3) With any amount of a Schedule I controlled substance, as listed in G.S. 90-89, or its metabolites in his blood or urine.
 

 N.C. Gen. Stat. § 20-138.1
 
 (2017).
 

 Here, the State presented sufficient and uncontroverted evidence establishing probable cause to arrest Defendant for driving while
 
 *847
 
 impaired. Defendant admitted to Officer Hall that he had driven his BMW between their two encounters. During the second encounter, Officer Hall observed that Defendant had red-glassy eyes, a moderate odor of alcohol, slurred speech, and that Defendant was unsteady on his feet to the extent that it was not safe to conduct standard field sobriety tests. While Officer Hall did not observe Defendant's driving behavior, he did have personal knowledge that Defendant had a blood alcohol concentration of 0.16 one hour and forty minutes prior to the second encounter. Officer Hall testified that based upon the standard elimination rate of alcohol for an average individual, Defendant would probably still be impaired. Thus, there was a reasonable basis for Officer Hall to believe that Defendant had driven his BMW while under the influence of alcohol.
 

 The information available to Officer Hall, along with his personal observations of Defendant, when taken as a whole, provided Officer Hall with probable cause to believe Defendant had probably committed the offense of driving while impaired.
 

 Conclusion
 

 Based upon the totality of the circumstances, probable cause existed to justify Defendant's second arrest for impaired driving. The trial court erred in granting Defendant's motion to suppress. Accordingly, we reverse and remand to the trial court.
 

 REVERSED AND REMANDED.
 

 Chief Judge MCGEE and Judge STROUD concur.