NO. COA14-270

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

STATE OF NORTH CAROLINA

    v.

JOSEPH OVEROCKER,
       Defendant.

Durham County
No. 12 CRS 60313

Appeal by the State from order entered 4 October 2013 by Judge Carl R. Fox in Durham County Superior Court. Heard in the Court of Appeals 28 August 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Christopher W. Brooks, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Kathleen M. Joyce, for defendant-appellee.*

GEER, Judge.

The State appeals the trial court's order granting defendant Joseph Overocker's motion to suppress and dismissing the charges against him based on a lack of probable cause to arrest defendant for impaired driving and unsafe movement. We hold that the trial court's findings of fact are supported by the evidence and in turn support the court's conclusion of law that the reasons relied upon by the officer for the arrest did not provide the officer with probable cause that defendant was

either impaired or had engaged in unsafe movement. We, therefore, affirm the order to the extent it grants the motion to suppress. Because, however, defendant did not make a written or oral motion to dismiss, controlling precedent requires that we reverse the trial court's dismissal of the charges.

## Facts

On 11 October 2012, defendant arrived at about 4:00 p.m. at a sports bar called Time Out Bar & Grill in Durham, North Carolina. Defendant parked his Porsche Cayenne SUV directly in front of the bar and met up with several friends, including Claude "Chip" Teeter. While defendant was inside the bar, a group of motorcyclists pulled into the Time Out parking lot, and one of them parked her motorcycle behind defendant's SUV. When defendant left the bar and started backing out of his parking spot, he collided with the motorcycle.

Officer Everette Jefferies, an off-duty police officer with the Durham Police Department, had ridden his motorcycle to Time Out and noticed defendant when he first arrived. Officer Jefferies was outside in the parking lot when defendant was leaving, and he witnessed the collision.

Officer Mark Lalumiere, who was on duty with the Durham Police Department, was dispatched to the scene. After talking with defendant and Officer Jefferies, Officer Lalumiere had

defendant perform standardized field sobriety tests ("FSTs"). Another Durham Police Department officer, Officer Marvin Hembrick, performed two portable breath tests ("PBTs") on defendant. Officer Lalumiere then arrested defendant for impaired driving and unsafe movement.

On 11 April 2013, a district court judge found defendant guilty of both charges, and defendant timely appealed to superior court. On 11 July 2013, defendant filed a motion to suppress, asking the superior court to suppress (1) all evidence gathered after the stop of defendant's vehicle or the first interview of defendant for lack of reasonable suspicion and (2) all evidence based on a lack of probable cause to arrest defendant. After hearing testimony from defendant, Mr. Teeter, and Officers Jefferies, Lalumiere, and Hembrick, the superior court entered an order granting defendant's motion to suppress. Additionally, in the same order, the court dismissed the charges against defendant.

In the suppression order, the court made the following findings of fact. Defendant and Mr. Teeter arrived at Time Out at around 4:00 or 4:30 p.m. Mr. Teeter testified that he and defendant were sitting at a table outside on Time Out's patio. Defendant and Mr. Teeter left Time Out at around 8:00 or 8:30

p.m. Over the course of the evening, Mr. Teeter consumed four beers, and defendant consumed four bourbons on the rocks.

Officer Jefferies noticed defendant and Mr. Teeter and because "they were talking loudly, . . . Officer Jeffries [sic] believed the Defendant was impaired." Apart from talking loudly, "there was nothing unusual about the Defendant's behavior or conversation in the bar."

While defendant and Mr. Teeter were in the restaurant, a group of motorcyclists parked their vehicles in Time Out's parking lot. One of these, "a pink, ninja sport motorcycle," parked "three to four feet behind the Defendant's Porsche sport utility vehicle on the passenger side." The trial court found that the pink motorcycle was "illegally parked."

At around 8:15 p.m., when it was dark outside, Officer Jefferies saw defendant and Mr. Teeter walk out of the restaurant, and he noticed that defendant and Mr. Teeter were still talking loudly. The trial court found that "[w]hen the Defendant left with his friend, [Officer Jefferies] saw the Defendant and thought the Defendant should not be driving because he continued to talk loudly. He did not observe anything unusual about the Defendant's appearance, smell, walking, balance, eyes, or speech, other than he was talking

loudly, upon which he based his opinion that the Defendant was impaired and should not be driving."

Defendant got into his vehicle with the radio playing and the air conditioning on. When defendant began to back up, a motorcyclist ran toward the illegally parked motorcycle, and, together with other motorcyclists, started yelling at defendant's SUV. One motorcyclist got onto the motorcycle, but was unable to move it in time. He jumped off, and defendant's SUV "backed over it, or struck it." The motorcycle fell over and it was dragged along the pavement for a short distance.

When defendant "heard something," he stopped and got out of his vehicle. One person was slapping his vehicle, while two others were holding the motorcycle he had struck. Defendant's SUV had a small scratch on the bumper.

The trial court found that "[b]ecause the motorcycle stood lower than the rear window of the Defendant's vehicle and there were other motorcycles parked in the parking space next to the passenger side of the Defendant's vehicle, there is no evidence the Defendant saw, or could even see the pink motorcycle parked behind his vehicle which was in a parking space, or was otherwise aware of its presence."

After defendant's collision with the pink motorcycle, the police were called, and Officer Lalumiere was dispatched to Time

Out at around 8:15 p.m. When he arrived, Officer Lalumiere "found a Porsche Cayenne sport utility vehicle and a pink motorcycle behind the parking spaces in the lane between parking spaces in the parking lot of the establishment. The motorcycle had scratches on it and there were gouge marks in the pavement from the kick stand of the motorcycle."

Officer Lalumiere spoke with defendant, and defendant said that "he came out of the restaurant and backed up striking the motorcycle." Defendant told the officer that he "had been at the bar for four hours" and initially claimed he had two drinks. When Officer Lalumiere asked him again about the drinks, defendant said he might have had three. The trial court found that "[t]he Defendant had an odor of alcohol which Officer Lalumiere described as 'not real strong, light.'"

Defendant then consented to Officer Lalumiere's conducting two FSTs. The first test Officer Lalumiere asked defendant to perform was the "Walk and Turn Test." After Officer Lalumiere instructed him how to perform the test, defendant "took nine steps heel-to-toe down one of the lines for a parking space while counting aloud without a problem." Defendant then asked Officer Lalumiere what he was supposed to do next. Officer Lalumiere reminded defendant to follow the instructions, and

defendant "walked back nine steps heel-to-toe down on the line while counting aloud without a problem."

Officer Lalumiere then asked defendant to perform the "One-Legged Stand Test." He explained the directions for that test, and when defendant was told to start, defendant "raised his foot more than six inches above the pavement, stopped after fifteen seconds, [and] put his foot down[.]" Defendant then looked at Officer Lalumiere and asked what he was supposed to do next. After Officer Lalumiere told defendant to complete the test, defendant "picked up his foot and continued for at least fifteen more seconds until he was stopped by Officer Lalumiere."

Mr. Teeter watched defendant while he performed the FSTs. According to the trial court, "Mr. Teeter did not see anything wrong with the Defendant's standardized field sobriety tests and he did not believe the Defendant was impaired, or unfit to drive on this occasion." The trial court noted that Mr. Teeter had no prior criminal convictions and that he "has a severe and very noticeable stutter when he talks and neither Officer Jeffries [sic] nor Officer Lalumiere recalled Mr. Teeter spoke with a stutter when he was interviewed after the accident."

Officer Lalumiere had requested an officer who was certified to administer PBTs. Officer Hembrick responded and, once at the scene, noticed that defendant had "a faint odor of

alcohol on his person and red, glassy eyes." Defendant submitted to two PBTs, both of which indicated the presence of alcohol in defendant.

Overall, Officer Lalumiere observed defendant for about an hour and concluded that defendant "'had consumed alcohol.'" However, defendant "was not slurring his speech and he walked without stumbling." While in the presence of the three officers -- Officers Lalumiere, Jefferies, and Hembrick -- "[d]efendant's speech was not slurred and he never staggered when he walked . . . ." Nonetheless, "[b]ased upon the fact that the Defendant had been at a bar, he was involved in a traffic accident, his performance tests and the odor of alcohol, Officer Lalumiere believed the Defendant 'was impaired and it was more probable than not that he would blow over the legal limit.' Therefore, he placed the Defendant under arrest for Impaired Driving."

Based on these findings, Judge Fox concluded,

> 3. The facts and circumstances known to Officer Lalumiere as a result of his observations and testing of the Defendant were insufficient, under the totality of the circumstances, to form an opinion in the mind of a reasonable and prudent man/officer that there was probable cause to believe that the offenses of Impaired Driving and Unsafe Movement had been committed and the Defendant was the person who committed those offenses.

> 4. The arrest of the Defendant for Impaired Driving and Unsafe Movement on this

occasion violated the Fourth Amendment of the United States Constitution and the North Carolina Constitution.

The trial court, therefore, allowed defendant's motion to suppress and ordered that "[t]he charges of Impaired Driving and Unsafe Movement against the Defendant" be dismissed. The State timely appealed to this Court.

## Standard of Review

"'[T]he scope of appellate review of an order [regarding a motion to suppress] is strictly limited to determining whether the trial [court]'s underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the [court]'s ultimate conclusions of law.'" *State v. Salinas*, 366 N.C. 119, 123, 729 S.E.2d 63, 66 (2012) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). Findings of fact that are not challenged "are presumed to be supported by competent evidence and are binding on appeal." *Tinkham v. Hall*, 47 N.C. App. 651, 652-53, 267 S.E.2d 588, 590 (1980).

Further, "'[i]f there is a conflict between the state's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal.'" *State v. Veazey*, 201 N.C. App. 398, 400, 689 S.E.2d 530, 532 (2009) (quoting

*State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982)). "This deference is afforded the trial judge because he is in the best position to weigh the evidence, given that he has heard all of the testimony and observed the demeanor of the witnesses. . . . '[B]y reason of his more favorable position, [the trial judge] is given the responsibility of discovering the truth.'" *State v. Hughes*, 353 N.C. 200, 207-08, 539 S.E.2d 625, 631 (2000) (quoting *State v. Smith*, 278 N.C. 36, 41, 178 S.E.2d 597, 601 (1971)).

<u>The State's Challenges to Findings of Fact</u>

The State challenges a number of the trial court's findings of fact. Based on our review of the record, we hold that each of the findings is supported by competent evidence or is a reasonable inference drawn from the evidence.

The State first points to the part of the trial court's finding of fact number 6 that the pink motorcycle "stood lower than the rear window of the Defendant's vehicle." At the hearing, Officer Jefferies stated that the height of the motorcycle was "[c]lose -- right at" defendant's rear window and that the motorcycle "probably would come up . . . to that line right there." Officer Jefferies demonstrated where he was referring to on a photo of the rear of defendant's SUV, although

the record does not indicate the location of the line on the photo where Officer Jefferies was pointing.

Because of the failure of counsel to memorialize in the record where Officer Jefferies pointed, the State contends that "close" "could mean above or below the [rear] window level," and this ambiguity renders the evidence incompetent. The trial court, however, was able to observe precisely where the officer was pointing.

In addition, Officer Jefferies explained that the pink motorcycle's "fairing is on the bottom," the windshield was part of the fairing, the windshield is "exposed . . . maybe about a [sic] inch" over the handlebars, and "the windshield is approximately 3 to 4 feet tall from the fairing." Later in the hearing, after all the evidence was presented, Judge Fox indicated his own familiarity with the same or similar type of motorcycle as the pink motorcycle defendant struck:

> I'm wondering how in the world any idiot
> would park a motorcycle behind an SUV. I
> mean, I'm quite familiar with those ninja
> bikes. They are not very tall. They're
> shorter than the average motorcycle, which
> is not very tall. . . . [I]t's unfathomable
> to me how you could do that. I mean, how
> you could do that and leave your motorcycle
> and not expect to come back and find it
> creamed. I just don't understand that.

"[I]t is the *appellant* who has the burden in the first instance of demonstrating error from the record on appeal[,]"

*State v. Adams*, 335 N.C. 401, 409, 439 S.E.2d 760, 764 (1994), and the State has failed to show that Officer Jefferies' reference to the photo of the SUV supported a finding contrary to the finding that "the motorcycle stood lower than the rear window of the Defendant's vehicle." Further, the finding that the motorcycle "stood lower than the rear window of the Defendant's vehicle," along with Judge Fox's remark that "it's unfathomable . . . how you could . . . leave your motorcycle [behind an SUV] and not expect to come back and find it creamed," indicate that Judge Fox dismissed any suggestion that the top of the motorcycle stood at or above the bottom of defendant's rear windshield. To the extent that any of the evidence offered as to the height of the pink motorcycle was conflicting, it was the duty of the trial court to resolve the conflict.

The State also challenges the portion of finding of fact number 6 that "there is no evidence the Defendant saw, or could even see the pink motorcycle parked behind his vehicle which was in a parking space, or was otherwise aware of its presence." Defendant testified that when he was walking to his SUV he did not see the motorcycle, and when he got to the SUV he did not walk around it "to check . . . if anything was parked behind it." Moreover, the trial court found that the motorcycle stood

lower than defendant's rear windshield, suggesting that defendant would not have been able to see the motorcycle from inside the SUV.

In arguing that the finding incorrectly stated that "no evidence" existed that defendant saw or could see the motorcycle, the State chiefly contends that Officer Jefferies testified "that a reasonable person would be able to see the motorcycle parked four to five feet behind the defendant's car." This assertion is not a fair representation of Officer Jefferies' testimony. When Judge Fox asked Officer Jefferies whether defendant "[w]as . . . in a position to see the motorcycle parked [behind his SUV][,]" Officer Jefferies responded, "I think a reasonable person probably could have seen it *because there were several motorcycles out there*." (Emphasis added.) The trial court could reasonably have concluded that the mere fact (1) that Officer Jefferies thought defendant "could have seen it" or (2) that there were other motorcycles parked elsewhere in the parking lot was not evidence that defendant did see or should have seen the motorcycle parked directly behind his SUV.

The State also suggests that there was actual evidence that defendant could see the motorcycle because it "was only partially behind the defendant's car" and "there was [sic] at

least three people that saw the motorcycle[,]" including Officer Jefferies, the individual who tried to move the motorcycle, and Mr. Teeter. With respect to the position of the motorcycle, while Officer Jefferies testified that "[t]he front wheel -- the forks, the front tire and part of the front fender was behind part of the vehicle," the trial court's unchallenged finding of fact that there were motorcycles parked in the parking space on defendant's passenger side suggests that defendant's view of the rest of the pink motorcycle was obfuscated.

As for the ability of others to see the motorcycle, the State disregards the fact that it did not show that any of the people who saw the motorcycle were in a location with similar visibility to that of defendant at the time they noticed the motorcycle. Indeed, the record shows that these three individuals had very different vantage points than defendant when he walked to his car, got into his car, and backed up.

Moreover, although the record indicates that Officer Jefferies and Mr. Teeter witnessed one to three individuals trying to move the pink motorcycle before defendant hit it, there is no actual testimony from Officer Jefferies or Mr. Teeter that either one of them noticed that the pink motorcycle was parked behind defendant's SUV before the frenzied efforts to try to move it. At most, Officer Jefferies testified that,

prior to defendant's backing up, he was aware that there were motorcycles in the parking lot. Based on our review of the evidence, the trial court could reasonably conclude that even though others may have been aware of the pink motorcycle before defendant backed into it, none of the evidence showed that defendant did see or could have seen the pink motorcycle parked behind his SUV.

The State next challenges the portion of finding of fact 10 that the pink motorcycle was "illegally parked" behind defendant's SUV. The State presented evidence -- including testimony from Officers Jefferies and Lalumiere -- that the pink motorcycle was not parked within the lines of any parking space and that it was parked directly behind defendant's SUV in the area of the parking lot where vehicles were intended to drive.

We fail to see any basis for objecting to the trial court's finding given the undisputed evidence regarding the location of the motorcycle. Indeed, the State during the motion to suppress hearing essentially conceded that point, although arguing that the fact was immaterial: "Maybe the motorcycle being behind the defendant's car led to an incident that wasn't the defendant's fault. That's not the issue. The issue is: Was the defendant impaired at the time that this incident happened?"

Finally, the State challenges finding of fact 19:

19. Mr. Teeter did not see anything wrong with the Defendant's standardized field sobriety tests and he did not believe the Defendant was impaired, or unfit to drive on this occasion. He has no prior criminal convictions. Mr. Teeter also has a severe and very noticeable stutter when he talks and neither Officer Jeffries [sic] nor Officer Lalumiere recalled Mr. Teeter spoke with a stutter when he was interviewed after the accident.

First, the State argues that there was no competent evidence to support a finding that Mr. Teeter "did not believe the Defendant was impaired, or unfit to drive on this occasion." However, Mr. Teeter's testimony indicated that he was with defendant throughout the entire evening and that he did not "notice [defendant] acting unusually . . . in the restaurant at all" or "being unusually loud or boisterous." Mr. Teeter also stated that he "did not see anything wrong" with defendant's performance on the FSTs that Officer Lalumiere conducted. This testimony was competent and supported the trial court's finding -- a reasonable inference from that testimony -- that Mr. Teeter did not believe defendant was impaired or unfit to drive.

The State also contends there is no evidence that "Mr. Teeter . . . has a severe and very noticeable stutter when he talks[.]" However, as the trial court was able to "see[] the witnesses, [and] observe[] their demeanor as they testif[ied]," he was in the best position to determine that Mr. Teeter spoke

with a stutter. *Hughes*, 353 N.C. at 208, 539 S.E.2d at 631. The State does not point to any evidence that Mr. Teeter did not have a stutter. Indeed, defense counsel noted that stutter on the record. Accordingly, we conclude that competent evidence supports finding of fact 19.

<u>The State's Challenges to the Conclusions of Law</u>

The State argues that the trial court's findings of fact do not support the conclusion that Officer Lalumiere lacked probable cause to arrest defendant for impaired driving.[1] Initially, we note that the trial court determined Officer Lalumiere lacked probable cause based on "[t]he facts and circumstances known to Officer Lalumiere as a result of his observations and testing of the Defendant . . . ." Additionally, the trial court also stated in finding of fact 23 that Officer Lalumiere concluded there was probable cause based on "the fact that the Defendant had been at a bar, he was involved in a traffic accident, his performance tests[,] and the odor of alcohol[.]" Because the State does not challenge this finding, it is binding on appeal.

In reviewing the determination that probable cause was lacking, therefore, we consider only those "facts and

---

[1]The State does not challenge the trial court's conclusion that probable cause was lacking for defendant's unsafe movement violation.

circumstances known to Officer Lalumiere as a result of his observations," which include the fact that defendant had been at a bar, was involved in a collision with the pink motorcycle, performed sobriety tests, and had an odor of alcohol.

Probable cause "deals with probabilities and depends on the totality of the circumstances" and "'[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt.'" *Maryland v. Pringle*, 540 U.S. 366, 371, 157 L. Ed. 2d 769, 775, 124 S. Ct. 795, 800 (2003) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310 (1949)). "'The test for whether probable cause exists is an objective one -- whether the facts and circumstances, known at the time, were such as to induce a reasonable police officer to arrest, imprison, and/or prosecute another.'" *Thomas v. Sellers*, 142 N.C. App. 310, 315, 542 S.E.2d 283, 287 (2001) (quoting *Moore v. Evans*, 124 N.C. App. 35, 43, 476 S.E.2d 415, 422 (1996)).

With regard to what Officer Lalumiere knew when he arrested defendant, the trial court found that when he arrived at Time Out, Officer Lalumiere knew that defendant had been inside Time Out drinking up to three drinks over the course of approximately four hours (although in actuality defendant had had four drinks). Defendant "came out of the restaurant and backed up

striking the motorcycle[,]" which was illegally parked behind defendant's SUV. There was no evidence that defendant saw the motorcycle or should have seen it before he backed up.

The State argues that other findings of fact related to the collision with the motorcycle support a conclusion that defendant was impaired. The State points to the trial court's finding that defendant dragged the motorcycle for a short distance before stopping, that there were gouge marks in the pavement as a result, and that defendant did not react to the individuals yelling at him to stop. The State argues that these findings constitute "evidence of the defendant's failure to recognize his surroundings . . . and . . . defendant had a delayed reaction time after he hit the motorcycle."

The trial court, however, made no finding -- and the record contains no evidence -- regarding whether defendant's reaction time was delayed in light of the "short distance" defendant traveled after hitting the motorcycle. Moreover, the trial court found that defendant's SUV suffered only a small scratch and the motorcycle's only reported damage was that it had "scratches on it." Further, the trial court's findings explained why defendant did not hear individuals yelling: he had the radio and air conditioning on. The State's argument regarding defendant's recognition of his surroundings and any

delayed reaction asks this Court to weigh the evidence and assess its credibility in a manner different from that of the trial court. We are not allowed to do so.

In short, the trial court's findings of fact support its conclusion that there was no probable cause to believe that defendant had engaged in unsafe movement. The State, at the trial level, essentially conceded that point, but argued there was still evidence of impairment.

The trial court's findings proceed to establish the lack of any other reasonable basis for concluding that defendant was impaired. The trial court found that apart from the traffic accident, Officer Lalumiere relied for probable cause on the fact that defendant had been at a bar, his performance tests, and the odor of alcohol on defendant. Yet, the trial court found that Officer Lalumiere testified that the strength of the alcohol odor was "'not real strong, light.'" In addition, none of the three officers on the scene observed defendant staggering or stumbling when he walked, and his speech was not slurred. Further, the only error defendant committed when performing the two field sobriety tests was to ask the officer half-way through each test what to do next. When instructed to finish the tests, defendant did so.

The State points to Officer Lalumiere's testimony that defendant "didn't do terrible" on the FSTs as "additional evidence . . . that defendant had committed an implied consent offense." However, this testimony conflicts with Mr. Teeter's testimony that he saw nothing wrong with defendant's performance on the FSTs. Further, the trial judge remarked that "these tests do not even begin to . . . come to the level . . . that I would view as being failed." The court, therefore, resolved any conflict in the evidence as to defendant's performance on the FSTs in favor of defendant.

The State argues on appeal that because Officer Lalumiere testified he spoke with Officer Jefferies, necessarily, Officer Jefferies' observations of defendant and his belief about his impairment provided part of Officer Lalumiere's probable cause. The trial court, however, in finding of fact 23, set out the circumstances upon which Officer Lalumiere relied in determining that he had probable cause to arrest defendant. That finding, which is binding on appeal, does not mention Officer Jefferies. It is apparent from other findings of fact that the trial court did not find Officer Jefferies completely credible. After weighing the evidence and assessing credibility, the trial court apparently determined that Officer Jefferies' claimed observations of defendant's prior behavior were not part of the

basis for defendant's arrest. The State presents no grounds for us to revisit that determination on appeal.

In sum, the trial court found that while defendant had had four drinks in a bar over a four-hour time frame, the traffic accident in which he was involved was due to illegal parking by another person and was not the result of unsafe movement by defendant. Further, defendant's performance on the field sobriety tests and his behavior at the accident scene did not suggest impairment. A light odor of alcohol, drinks at a bar, and an accident that was not defendant's fault were not sufficient circumstances, without more, to provide probable cause to believe defendant was driving while impaired.

The State contends that the facts of this case are similar to those in *Steinkrause v. Tatum*, 201 N.C. App. 289, 295, 689 S.E.2d 379, 383 (2009), *aff'd per curiam*, 364 N.C. 419, 700 S.E.2d 222 (2010), in which this Court found probable cause to arrest the driver for impaired driving when (1) the driver was involved in a one-car accident that resulted in the car being found upside down in a ditch after rolling several times, (2) one officer noted an odor of alcohol on the driver, and (3) a second officer observed that the driver looked dirty and sleepy. The Court specifically found probable cause based on the "fact

and severity of the one-car accident coupled with some indication of alcohol consumption." *Id.*

The Court emphasized that a "car accident alone does not support a finding of probable cause." *Id.* at 294, 689 S.E.2d at 382. In this case, the accident was minor and determined by the trial court to not be defendant's fault. Nothing in *Steinkrause* or any of the other cases cited by the State suggest that such an accident combined with evidence of alcohol consumption and a light odor of alcohol is sufficient to give rise to probable cause with no evidence of actual impairment.

Finally, the State argues that "while the numerical reading on the portable breath test was not admissible at the probable cause hearing, that number was before the officer in his consideration of whether defendant had operated a motor vehicle with a certain alcohol concentration." The State represents that finding of fact 23 finds that "Officer Lalumiere had a portable breath test reading that indicated to him that defendant 'was impaired and it was more probable than not that he would blow over the legal limit.'" However, contrary to the State's implication that Officer Lalumiere used a specific alcohol concentration reading from one of the PBTs to form probable cause, the evidence and the order only indicate that

the PBTs returned "positive" results for alcohol in defendant's bloodstream.

Notwithstanding the absence of any numerical reading from an alcohol screening test in the evidence before us, the State cites *State v. Rogers*, 124 N.C. App. 364, 370, 477 S.E.2d 221, 224 (1996), for support. In *Rogers*, the trial court admitted the numerical reading of an Alco-sensor test, in accordance with N.C. Gen. Stat. § 20-16.3 (1995), to help establish whether the arresting officer had probable cause for the defendant's driving impaired. 124 N.C. App. at 370, 477 S.E.2d at 224. However, the pertinent language of N.C. Gen. Stat. § 20-16.3 that allowed the arresting officer in *Rogers* to consider the numerical reading of the Alco-sensor test was supplanted in 2006 by the current version of the statute. 2006 N.C. Sess. Laws ch. 253, § 7. The plain language of N.C. Gen. Stat. § 20-16.3(d) (2013) prohibits "the actual alcohol concentration result" of an "alcohol screening test" from being used "by a law-enforcement officer . . . in determining if there are reasonable grounds for believing . . . [t]hat the driver has committed an implied-consent offense under G.S. 20-16.2[,]" such as driving while impaired.

Moreover, in light of the absence of any numerical reading in the evidentiary record before us, the State's argument would

effectively allow law enforcement to evade review when arresting individuals for impaired driving after conducting alcohol screening tests. This argument, therefore, is wholly without merit.

## Motion to Dismiss

We lastly address the issue whether the trial court erred in dismissing the charges against defendant. We note that the State, in support of its position, merely repeats its arguments that the trial court erred in concluding that Officer Lalumiere lacked probable cause to arrest defendant. The State does not, however, cite any authority suggesting that the trial court erred in dismissing the charges.

However, pursuant to her ethical duty of candor to this Court, defendant's appellate counsel properly referred the Court to *State v. Joe*, 365 N.C. 538, 723 S.E.2d 339 (2012) (per curiam). In *Joe*, the Supreme Court reversed this Court for affirming a trial court's dismissal of the State's charge of felony possession of cocaine with intent to sell or deliver because the defendant made no written or oral motion to dismiss that charge. *Id.* at 539, 723 S.E.2d at 340. Here, defendant made no written or oral motion to dismiss the charges, and, therefore, we must reverse the trial court's dismissal.

Affirmed in part; reversed and remanded in part.

Judge STEELMAN concurs.

Judge ROBERT N. HUNTER, JR. concurred in this opinion prior to 6 September 2014.