DAVIS, Judge.
Sergio Dasuan Terrell ("Defendant") appeals from his conviction for driving while impaired. On appeal, Defendant contends that the trial court erred by denying his motion to suppress where his detention by a law enforcement officer constituted a warrantless arrest that was not supported by probable cause. After a thorough review of the record and applicable law, we reverse the trial court's denial of Defendant's motion to suppress and vacate the judgment entered upon his guilty plea.
Factual and Procedural Background
On the night of 10 October 2015, Officer David Artieri of the Charlotte-Mecklenburg Police Department was off duty and working as a security guard for a Charlotte nightclub. As part of his duties for that position, Officer Artieri - along with another off-duty police officer also working at the nightclub that evening - was monitoring the exterior of the establishment as well as its private parking lot.
During the course of his shift, Officer Artieri saw Defendant "back out of a parking space and strike another vehicle in the parking lot." The collision occurred at a low speed and Officer Artieri did not "observe any noticeable damage" to the vehicle that was struck. He stopped Defendant from exiting the parking lot and approached his vehicle.
Officer Artieri asked Defendant for his driver's license and noticed "a strong odor of an alcoholic beverage emitting from his breath and person." Defendant took "several minutes" to produce his driver's license. At that point, Officer Artieri formed the opinion that Defendant was impaired and subsequently placed a call for an on-duty officer to "come and assist in further investigation [of] Defendant's impairment level." Although Officer Artieri did not place him under arrest, he testified that Defendant was not "free to leave."
According to Charlotte-Mecklenburg Police Department's dispatch records, a call was placed requesting that an officer respond to Officer Artieri's location at 12:15 a.m. on 11 October 2015. Officer J.S. Cerdan responded to the call immediately and activated his body camera upon arriving at the scene at 12:21 a.m. After speaking with Officer Artieri about what he had observed, Officer Cerdan "looked at the vehicles, took pictures, did [his] sobriety test[s] with [Defendant], ... placed him under arrest at 12:39, and then transported him to intox for the breath test, and then to the magistrate."
Following Defendant's arrest for driving while impaired, Officer Artieri memorialized the incident in a report he prepared at approximately 1:30 a.m. In his report, he wrote that his interaction with Defendant began at 11:20 p.m. on 10 October 2015.
Defendant was subsequently tried and convicted of driving while impaired in Mecklenburg County District Court. At Defendant's district court trial, Officer Artieri's testimony was consistent with his report in that he stated that he initially encountered Defendant at 11:20 p.m.
Defendant appealed his conviction to Mecklenburg County Superior Court. On 13 February 2017, he filed a motion to suppress "any evidence obtained as a result of the prolonged stop and arrest by Officer Artieri." Defendant's motion to suppress was heard in superior court before the Honorable Yvonne Mims Evans on 5 September 2017. During the hearing, Officer Artieri testified that he actually made contact with Defendant not at 11:20 p.m. on 10 October but rather at 12:20 a.m. on 11 October and that Officer Cerdan "came somewhere in the range of ten minutes later."
On 6 September 2017, the trial court orally denied Defendant's motion to suppress. In denying his motion, the trial court made the following pertinent oral findings:
That the defendant left the club at 304 East Stonewall Street at approximately 11:20 on October the 10th, 2015.
....
When [Officer Artieri] stopped the defendant he smelled a strong odor of alcohol about his person. That gave Officer Artieri probable cause, both seeing him hit the vehicle and the strong odor of alcohol, to detain the defendant until an on-duty officer could arrive at the scene. When the on-duty officer arrived at approximately 12:21 he then performed the field sobriety tests or did the other things that were necessary to make the arrest.
At the trial of the defendant in District Court Officer Artieri, prior to the trial, had written in his report that he stopped the defendant at 11:20 p.m., and he testified to that same time at the trial. The defendant was convicted in District Court of driving while impaired.
The second officer, [Cerdan], became aware that there was a time discrepancy, and conducted his own independent research. And verified, to the extent possible, through other records of the Charlotte-Mecklenburg Police Department, the time that he received the call for service, which was at 12:15 a.m. on October the 11th. And the time that he arrived at 304 East Stonewall Street, which was at 12:21 a.m. on October the 11th. And he ultimately placed the defendant under arrest at 12:39 a.m.
So through Officer [Cerdan's] records we can determine that it took him less than ten minutes, once the call for service was put out, to arrive at the scene. Therefore it appears that, and the Court finds, that the defendant was held between 11:20 and at least 12:21 a.m.
However, I do not find that this period of time was unreasonable, given the fact that Officer Artieri had observed the defendant hit a vehicle and that he smelled a strong odor of alcohol about his person. So he certainly had probable cause to hold him, and therefore the motion is denied.
....
Oh, and I need to add this as well. At this hearing yesterday Officer Artieri testified that he made an error in his report and his testimony when he said that he observed the defendant at 11:20. He said in fact it was 12:20, which is also consistent with Officer [Cerdan's] report.
And the Court, the Court believes that he actually stopped the defendant at around 11:20 p.m. Can't explain why it took him so long to put in a call for service.
(Emphasis added.)
Following the trial court's denial of his motion to suppress, Defendant gave notice in open court of his intent to appeal the court's ruling. He then pled guilty to the charge of driving while impaired. The trial court sentenced Defendant to sixty days in the custody of the Misdemeanant Confinement Program, suspended the sentence, and placed him on unsupervised probation for twelve months. At that point, Defendant formally gave notice of appeal.
Later that same day, the trial court entered a written order denying Defendant's motion to suppress. In the written order, the trial court made the following pertinent findings of fact:
....
4. There was no evidence that Officer Artieri questioned Defendant; had any conversation with him from the time that he stopped Defendant until he made the decision to contact dispatch or that Defendant made any unsolicited statements to Officer Artieri.
5. A call for service went out at 12:15 am on October 11, 2015. Officer Cerdan responded to the call, arriving at the Stonewall address at 12:21 am. Defendant was placed under arrest by Officer Cerdan at 12:39 am and transported to the Mecklenburg County jail.
6. Officer Artieri completed his incident report later that morning at approximately 1:30 am. In the report, he wrote that he stopped the Defendant at 11:20 pm.
7. Artieri testified in the Defendant's District Court trial that he stopped defendant at 11:20 pm.
8. Defendant stated that he left the club at approximately 11:20 pm. He says that Officer Artieri made him stand outside of his car until Officer Cerdan arrived.
....
10. At the September 5, 2017 hearing, Officer Artieri testified that the 11:20 pm time was incorrect, both in his report and in his previous testimony. He said that he actually stopped the Defendant at approximately 12:20 am on October 11, 2015 and that Officer Cerdan arrived in less than ten minutes from the time that Defendant was stopped.
11. The Court recognizes the inconsistency in Officer Artieri's time references and concludes because he and Cerdan agree that Cerdan arrived within ten minutes of the call for service that Artieri erred initially when he wrote that he initially stopped Defendant at 11:20 pm.
Analysis
On appeal, Defendant argues that the trial court erred by denying his motion to suppress. Specifically, he asserts that (1) the trial court lacked jurisdiction to enter a written order containing findings materially in conflict with its prior oral order; (2) his detention by Officer Artieri constituted a warrantless arrest requiring probable cause; and (3) no probable cause existed to support his arrest. We address each argument in turn.
I. Jurisdiction of Trial Court to Enter Written Order
Defendant first contends that following his entry of notice of appeal the trial court lacked the authority to enter a written order containing material findings that were in conflict with its earlier oral findings. He asserts that once he gave notice of appeal "the trial court was without jurisdiction to enter a written order abandoning the factual findings it announced in open court." We agree.
N.C. Gen. Stat. § 15A-1448(3) states that "[t]he jurisdiction of the trial court with regard to the case is divested, except as to actions authorized by G.S. 15A-1453 [relating to ancillary actions taken by the trial court during the pendency of an appeal], when notice of appeal has been given[.]" N.C. Gen. Stat. § 15A-1448(3) (2017). This Court has stated the following with regard to this issue:
The general rule is that the jurisdiction of the trial court is divested when notice of appeal is given, except that the trial court retains jurisdiction for matters ancillary to the appeal, including settling the record on appeal. In addition, a court of record has the inherent power to make its records speak the truth and, to that end, to amend its records to correct clerical mistakes or supply defects or omissions therein. In doing so, however, the court is only authorized to make the record correspond to the actual facts and cannot, under the guise of an amendment of its records, correct a judicial error or incorporate anything in the minutes except a recital of what actually occurred.
State v. Davis , 123 N.C. App. 240, 242-43, 472 S.E.2d 392, 393-94 (1996) (internal citations omitted).
In assessing whether a trial court retained jurisdiction to take certain actions following the entry of notice of appeal, we have distinguished between the correction of judicial errors and clerical errors. Compare id . at 243, 472 S.E.2d at 393 (trial court "impermissibly corrected a judicial error" by amending the defendant's judgments in a manner that did not correspond with what actually occurred at trial) and State v. Murphy , 240 N.C. App. 90, 772 S.E.2d 13, 2015 WL 1201326, *6 (2015) (unpublished) (judicial error where trial court amended judgments initially entered "based on a misunderstanding of applicable sentencing law"), with State v. Jarman , 140 N.C. App. 198, 204, 535 S.E.2d 875, 879 (2000) ("The court's correction of the clerical error resulting from inaccurate information inadvertently provided by the deputy clerk was proper.").
In the present case, the trial court entered its 6 September 2017 written order after having announced its oral findings and following Defendant's entry of his notice of appeal in response to those oral findings. In its oral ruling announced in open court, the trial court stated its determination that Officer Artieri had "actually stopped Defendant at around 11:20 p.m. Can't explain why it took him so long to put in a call for service." In its written order, however, the trial court made a contrary finding that "because [Officer Artieri] and Cerdan agreed that Cerdan arrived within ten minutes of the call for service that Artieri erred initially when he wrote that he initially stopped Defendant at 11:20 pm."
We conclude that the finding in the trial court's written order regarding the time at which Officer Artieri stopped Defendant is directly in conflict with the finding contained in its previously entered oral ruling on that precise issue. Moreover, the time at which Defendant was initially stopped by Officer Artieri is not a peripheral matter ancillary to this appeal. Rather, it concerns the primary conflict in the evidence for which a judicial finding of fact was needed and bears directly upon Defendant's argument that his detention by Officer Artieri constituted a de facto warrantless arrest requiring probable cause.
Thus, for the reasons set forth above, the finding at issue in the trial court's written order constituted an impermissible attempt to correct a judicial error. We therefore hold that the trial court lacked jurisdiction to make the contrary finding contained in its written order. Accordingly, we consider only the court's oral findings in our consideration of Defendant's remaining arguments.
II. Duration of Seizure
Defendant next contends that the extended duration of his detention by Officer Artieri amounted to a warrantless arrest requiring probable cause. Once again, we agree.
It is well established that "[t]he Fourth Amendment protects the right of the people against unreasonable searches and seizures. It is applicable to the states through the Due Process Clause of the Fourteenth Amendment." State v. Watkins , 337 N.C. 437, 441-42, 446 S.E.2d 67, 69-70 (1994) (internal citations, quotation marks, and ellipsis omitted). "There are generally two types of seizures under the Fourth Amendment: (1) arrests and (2) investigatory stops. Arrests require that the arresting officer have probable cause, whereas investigatory stops do not." State v. Thorpe , 232 N.C. App. 468, 477, 754 S.E.2d 213, 220-21 (2014) (internal citations and quotation marks omitted).
Under the standard initially set out in Terry v. Ohio , 392 U.S. 1, 20 L.Ed. 2d 889 (1968), "officers temporarily detaining someone for investigatory purposes only require reasonable suspicion of criminal activity." Id. (citation and quotation marks omitted). However, even where a brief detention is authorized under Terry , "the characteristics of the investigatory stop, including its length, the methods used, and any search performed, should be the least intrusive means reasonably available to effectuate the purpose of the stop[.]" State v. Carrouthers , 213 N.C. App. 384, 388, 714 S.E.2d 460, 464 (citation and quotation marks omitted), disc. review denied , 365 N.C. 361, 718 S.E.2d 392 (2011).
The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.
Florida v. Royer , 460 U.S. 491, 500, 75 L.Ed. 2d 229, 238 (1983).
Furthermore, "[w]here the duration or nature of the intrusion exceeds the permissible scope, a court may determine that the seizure constituted a de facto arrest that must be justified by probable cause, even in the absence of a formal arrest." State v. Milien , 144 N.C. App. 335, 340, 548 S.E.2d 768, 772 (2001) (citation omitted). In assessing whether a seizure constituted a de facto arrest, reviewing courts should determine whether law enforcement officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe , 470 U.S. 675, 686, 84 L.Ed. 2d 605, 616 (1985). "Although length in and of itself will not normally convert an otherwise valid seizure into a de facto arrest, where the detention is more than momentary, as here, there must be some strong justification for the delay to avoid rendering the seizure unreasonable." Thorpe , 232 N.C. App. at 481, 754 S.E.2d at 223.
In the present case, the trial court found that Officer Artieri initially detained Defendant at 11:20 p.m. and held him for over an hour until Officer Cerdan arrived at the scene at 12:21 a.m. In addition, the court noted that Officer Artieri had provided no explanation for the nearly one-hour delay between the time at which he initially stopped Defendant and the time of his call for assistance from an on-duty officer at 12:15 a.m. During that time, according to Officer Artieri's testimony, Defendant was not free to leave.
Thus, Defendant was detained for nearly an hour until Officer Artieri called for an on-duty officer to assist with the investigation. No evidence was presented showing that Officer Artieri was actively pursuing the investigation during the intervening period or that any other justification existed for the delay. Therefore, we hold that Defendant's detention constituted a de facto arrest requiring probable cause.
III. Existence of Probable Cause
Having concluded that Defendant's detention was a warrantless arrest, we must now determine whether probable cause for such an arrest existed. "Probable cause exists when the information known to the officer is sufficient to warrant a prudent man in believing the suspect had committed or was committing an offense." State v. Dickens , 346 N.C. 26, 36, 484 S.E.2d 553, 558 (1997) (citation and quotation marks omitted).
In order for a defendant to be convicted of driving while impaired, the State must prove that he "ingested a sufficient quantity of an impairing substance to cause his faculties to be appreciably impaired. This means a finding that defendant's impairment could be recognized and estimated." State v. Phillips , 127 N.C. App. 391, 393, 489 S.E.2d 890, 891 (1997) (internal citations omitted). Our Supreme Court has held that "[a]n odor of alcohol on the breath of the driver of an automobile is evidence that he has been drinking. However, an odor, standing alone, is no evidence that he is under the influence of an intoxicant[.]" Atkins v. Moye , 277 N.C. 179, 185, 176 S.E.2d 789, 793 (1970) (internal citations and emphasis omitted). Similarly, "[i]nvolvement in an automobile accident cannot be said per se to provide probable cause" with regard to the offense of driving while impaired. State v. Hollingsworth , 77 N.C. App. 36, 44, 334 S.E.2d 463, 468 (1985). Rather, "[i]t is the fact and severity of the ... accident coupled with some indication of alcohol consumption on the part of the driver that is determinative of probable cause to arrest." Steinkrause v. Tatum , 201 N.C. App. 289, 295, 689 S.E.2d 379, 383 (2009), aff'd per curiam , 364 N.C. 419, 700 S.E.2d 222 (2010).
In State v. Overocker , 236 N.C. App. 423, 762 S.E.2d 921, disc. review denied , 367 N.C. 802, 766 S.E.2d 686 (2014), we upheld the trial court's determination that the defendant's arrest for driving while impaired was unsupported by probable cause. Id. at 435, 762 S.E.2d at 928. In Overocker , the defendant struck a motorcycle that was illegally parked behind his vehicle after exiting a bar where he had consumed "up to three drinks over the course of approximately four hours." Id. at 433, 762 S.E.2d at 927. Following the collision, the defendant dragged the motorcycle "a short distance before stopping," which resulted in gouge marks in the pavement. Id. at 433, 762 S.E.2d at 927-28. The arresting officer also detected a light odor of alcohol on the defendant. Id. at 434, 762 S.E.2d at 928. This Court noted that the accident was "minor and determined by the trial court to not be defendant's fault" before concluding that "such an accident combined with evidence of alcohol consumption and a light odor of alcohol" did not provide probable cause to believe the defendant was driving while impaired. Id. at 435, 762 S.E.2d at 929.
Conversely, we have repeatedly found the existence of circumstances giving rise to probable cause where the driver was involved in a serious accident tending to indicate an impairment of coordination and the arresting officer detected an odor of alcohol. See, e.g., Steinkrause , 201 N.C. App. at 294, 689 S.E.2d at 382 (probable cause to arrest existed where officer detected odor of alcohol and driver's vehicle was found upside-down in a ditch); Richardson v. Hiatt , 95 N.C. App. 196, 200, 381 S.E.2d 866, 868 (1989) (circumstances supporting probable cause determination beyond odor of alcohol were present where driver was "involved in a one-vehicle accident in which his car went off the road into a ditch" on a clear day when driving conditions were excellent); Hollingsworth , 77 N.C. App. at 44, 334 S.E.2d at 468 (circumstances indicated impairment of coordination giving rise to probable cause where the defendant's accident "was due first to a miscalculation in judging the distance between his automobile and the Datsun, then to an inability to prevent his high-speed crossing of the median").
We believe that this case is more similar to Overocker . Here, as in Overocker , Defendant was involved in a minor accident while backing out of a parking space. The collision occurred at a low speed and resulted in no visible damage to either vehicle. Although Officer Artieri smelled a strong odor of alcohol about Defendant's person, he did not testify that Defendant displayed any physical signs of impairment or made any statements tending to indicate that he was impaired.[1] While the odor of alcohol and the fact that Defendant backed into a parked car would have given Officer Artieri reasonable suspicion to initially detain him, these circumstances did not - without more - constitute probable cause to actually arrest Defendant for driving while impaired.
Thus, because the warrantless arrest of Defendant was unsupported by probable cause, we hold that the trial court erred in denying Defendant's motion to suppress. Accordingly, we reverse the trial court's 6 September 2017 order denying Defendant's motion to suppress and vacate the judgment entered upon Defendant's guilty plea.[2] See State v. Buckheit , 223 N.C. App. 269, 273, 735 S.E.2d 345, 348 (2012) (reversing denial of defendant's motion to suppress Intoxilyzer results and vacating judgment entered based on guilty plea).
Conclusion
For the reasons stated above, we reverse the trial court's 6 September 2017 order and vacate the judgment entered upon Defendant's guilty plea.
REVERSED AND VACATED.
Report per Rule 30(e).
Judges HUNTER, JR. and MURPHY concur.

Officer Artieri did testify that it took Defendant "several minutes to produce a driver's license." However, in making its determination that Officer Artieri had probable cause to detain Defendant, the trial court did not rely upon this testimony.

Based on our holding, we need not address the additional arguments concerning sentencing contained in Defendant's brief. See State v. Ipock , 129 N.C. App. 530, 534, 500 S.E.2d 449, 451 (1998) ("In light of our disposition of this case, we need not reach defendant's remaining assignments of error.").